We will ask case number 18-30002 Carlisle v. Musall to come forward. All right. When y'all are ready, Ms. Wisner for Carlisle. I hope I got something right. May it please the Court. Good morning. I'm Marie Riccio Wisner. I'm here on behalf of the plaintiffs' appellants. As the Court, I'm sure, is aware, this case involves claims brought under 42 U.S.C. section 1983 for unlawful detentions imposed by these appellees who are a case manager, a probation coordinator, and a program administrator in connection with a drug court treatment program that is operating in Jefferson Parish. If we conclude that this was actually a court process rather than a drug treatment program, do you then lose the case? Can I lose the case? Well, you lose the appeal. I guess you already lost the case. Oh. I'm not quite sure I understand the question, but Because you keep referring to it as a drug treatment program. That seems to be central to your argument that, you know, employees of a drug treatment program do not have absolute immunity. But if we instead conclude this is a court program, if you will, a court proceeding, then why are these people any different from if you didn't like my ruling in this case and you sued my law clerk that you thought might have helped draft it? I can answer that. They are not adjudicators. They are nonjudicial officers. Even my law clerks aren't adjudicators. But the case law says that a law clerk is almost like performing a ministerial act. They have no choice. What they're doing is what the judge asked them to do. So the absolute immunity that a judge would have if he's acting within his jurisdiction passes to the law clerk. You think law clerks are performing ministerial acts? I mean, law clerks are doing research. They're bringing to our attention cases. They're making a statement as to they think the case should be affirmed or reversed. They don't decide it. We decide it. But they certainly have a thought. If you were able to discover what that was, can you sue the law clerk? Say, well, you missed this case or you made the wrong advice. But a law clerk is not the same as a case manager or a probation officer. A case manager is a person who actually can make a decision of a recommendation to be made based on what the case manager thinks was the offense that was committed by the participant. And it's really important, that distinction, because what did happen here is that the case manager, the probation officer, this team would meet on a Monday and go over who was noncompliant with the program based on their view. And noncompliant is something simple. It could be not showing up for a meeting on time, or it could be your paperwork from your AA Alcoholics Anonymous is incomplete. It doesn't mean it's a technical probation violation. It's just noncompliance with their rules. If you're going to have to aid the court in making a decision as to whether the person should be sent, you know, held in contempt, taken out of the program, whatever, the judge was ultimately going to make the decision. They're making recommendations to that judge. Why is that not part of the absolute immunity umbrella? Because those are not the facts. They made recommendations that were really actions, and this is why they were actions and policies and practices that were implementing an unlawful policy, because when they would reach a conclusion with no judge present on Mondays that somebody was going to be given a six-month sanction for contempt, even though this was, for example, failing to provide the proper paperwork, they would then decide as part of their policy and practice that the participant would be given no notice of this prior to appearing the next day for their ordinary weekly appearance. So when that participant would appear, he would be immediately detained, because in a half-hour meeting with the judge, by the officer inside the courtroom who generally was a deputy sheriff, there was no judicial order at that time, and it's very complicated, but what happened in that courtroom is it's four walls of a courtroom, but it wasn't a court. There was no court reporter. There was no verbatim transcript. Was there a judge? There was a judge, but there was no record. I mean, proceedings happen all the time without a court reporter. Summary judgment hearings in Texas, for example, almost never have a court reporter. But there would be a recording judge. There would be an oral recording. No, there would not. Then there would be a deputy clerk, a minute clerk in the courtroom. One of the things we learned. Actually not. I mean, I was a state trial judge in Texas for eight years, civil, not criminal, certainly could call a court reporter out there to take down what happened at a summary judgment, but if I didn't and the lawyers didn't ask for it, there was no record at all except what notes I might have made on the docket sheet. This is one of the reasons why on a Rule 12, an issue like this should never have been decided. I'm going to give you an example of what happened in that courtroom. First example was pretty – was apparent from the beginning. That was after my client, Mr. Carlisle, on August 25th was detained, after the judge dismissed him. He was detained by these appellees. The following week on September 1st, a private attorney was hired by the family who actually requested permission to go into this closed courtroom. Remember, this is not an open courtroom. I – then none of the rules are followed. None of the district court rules, none of the specialty court rules. Let me ask you this, counsel, because as I understand it, the people who are participating in the – we call it a drug treatment court. They're there because they got an arrest and a charge on some infraction, some violation of some criminal statute. That's why they're there, right? He's there because he was arrested and charged with possession of three Percocet pills, which were from his mother's prescription when he borrowed her car, and possession of marijuana. When he got to a position where he actually could appear, because he was arrested in November, went to jail, finally in January he's offered the drug court. So actual possession of marijuana is still a crime in Louisiana. Correct. So he agrees to – So he's there because he's been arrested and charged with a crime. But then instead of facing the criminal consequences of possession of marijuana, let's assume the person is guilty of the possession of marijuana, instead of facing the criminal consequences of possession of marijuana, they instead get to participate in a drug treatment court. Is that right? Well, what happens is he pleads. He pleads guilty and he gets a deferred sentence. This is a post-conviction program. All right. So part of the deferred – Let me finish my question. So does the defendant elect to go into the drug treatment program? In other words, they could say, I don't want to do any drug treatment program, just sentence me. He can say that. But what – he can say that. And this case is not about a challenge to that original conviction for possession or the agreement to the program. Where I'm headed is once you elect to be removed from the traditional criminal justice system into a drug treatment court, then you subject yourself to the rules and regulations of this diversion, which allows that you can now be part of a drug treatment court and not have to face your criminal sanctions. Except that while he was in that program, they then started charging him and convicting him without actual convictions and judgments of a separate charge, which was contempt. Contempt is a contumacious behavior in front of a judge. It has to take place in front of a judge. What this program did was if they failed, for example, to appear on time for a meeting, these appellees would then put him on a list that he would receive a contempt. Why? From who? Who signed off on the contempt? Nobody signed off. There was no entry by the judge on that? There's no signed judicial orders on any of these. Okay. Did the judge make an entry? Let me get to that. There's no record entry. The only thing that appears, and the reason why it's important, is because the drug court statute doesn't allow for jail time. What it allows, if there are violations of the program, that there then has to be a motion to terminate the program, and then he can be maybe sent to a State facility for intensive probation. But what they did have were these minute entries, a minute entry by a deputy clerk under the no signature, just typed by the deputy clerk, and all it would say would be contempt, six months flat time in the local jail. Those minute entries bear little resemblance to what happened inside that courtroom. And to get back to that point. You mentioned a statute. Pardon? You mentioned a statute that creates the whatever you want to call it. 1353-04. Okay. So what I have not heard mentioned yet in your presentation is the Eleventh Amendment or quasi-judicial immunity. So don't we have to decide that first? We do. In order to decide the Eleventh Amendment question, don't we have to look at the structure of these whatever you want to call them? Call them Shaquille O'Neal. Call them whatever you want to call them. Court, treatment, basketball. It doesn't matter. We have to look at certain indicia in the statute to tell us whether this is, in fact, an arm of the State or not. And we never got to that. How do we decide that? We never got to that with the judge because it was under Rule 12. The Eleventh Amendment and sovereign immunity would require that you look at the most critical factor, which is who's going to pay a judgment. There are generally six factors. This was a very parish-centric organization. They were not — I actually allege that the probation officer who's a defendant here was a State probation officer. It turns out he wasn't. My understanding was he was actually a local parish deputy, former deputy. When this — when I filed this suit, this program was on the website of the parish as under the parish executive. And I think that's where it started out. The people who were involved in implementing it, the compliance officer was a local Gretna police officer. The probation officer was a parish deputy. And they work very closely with the sheriff of the local parish. I think those were factors that should have been taken into account. But we didn't even know those factors because we never got any discovery. The judge did not allow any discovery whatsoever during these Rule 12 motions. And they went on endlessly. There would be a slew of them, and then there would be an attempt to start discovery, and then another slew of them. Just what I'm wondering, it seems like you're challenging kind of the whole way this system is structured. And so instead of going against the rank and file, if you will, it would seem like you'd bring injunctive relief similar to these bail cases that we had, for example, the one we had out of Houston where they said you're not — you, the judges, are not following bail procedures properly. And they challenged that. They sued the judges. I mean, you're not going to get money damages, but you're going to get relief, injunctive relief. And why would that not have been the proper vehicle here? You're basically saying this is a whole secret chamber kind of bizarro, unfair setup. Well, that and the case manager, that goes to the judge then. The judge has to be responsible for that. Actually — And that's where you should get the injunctive relief from. Actually not. Because in this case, the handbook, which sets out three tiers of sanctions that could be put on any of these probationers, has as the third tier multiple days in jail or termination. Nowhere does it say 30, 60, 90 days of timeout in the local parish jail, which is what they gave them. But Judge Haynes was asking about why didn't you seek injunctive relief. And I may not be on the same page. I just may be wrong about this. But I thought you had sought injunctive relief, but that there's no ability to give injunctive relief at this point, because aren't your clients not even in this program anymore? Well, let me address that. Yes, we did seek injunctive. But not against the judges. You sought it against the case administrators. And that is where it should have been sought. Let me explain why. What would you get from an injunction against a case administrator? What later came out was we argued flat time was what was being administered and no credit for the jail time. Again, what later came out is that the judges, the judges wrote and signed orders in which, according to the statute, this 1353-04, any credit, any time spent in the local jail while in the program was credited toward your ultimate time after being revoked. These appellees, combined with the sheriff, did not give that time because — and it wasn't even consistent with saying that all of the credit for contempt would not be given and then some credit for other types of violations would be given. There was no consistency to when the jail or the sheriff who wrote the jail credit letters to the Department of Correction as to what time had been spent while in the probation program that should be credited. Maybe you just answered it so, but I — so let me try again. If you did get an injunction, hypothetically, what would you get? What relief do you want from the — whoever you sued for an injunction? The injunction would state, number one, that the waiver, the second general prospective waiver in which all of these participants signed to waive all of their rights under the Louisiana Constitution and U.S. Constitution is declared unenforceable. That would be the first, because the waiver is put on them by these appellees. It's by the program people, not the judge. Because I've looked at the records, and the records show that when they first come into the court and they're pleading, as Judge Graves was talking about, to the original charge, they sign a waiver that is the original waiver, which is a waiver of a jury trial. How would that help them now, your clients? How would it help them? Well, firstly, they have collateral effects from these detentions. They have it in the fact that they don't get — But Carlyle has a pending habeas that we sent back that's now been transferred to Judge Vitter. It's my understanding. So it's still pending. So there becomes the other problem. They do have collateral effects. The habeas is one issue. When you have a 6-month or a 30-day or a 90-day sanction, it's virtually impossible if you have been told that you have no rights whatsoever and you've signed this waiver in which you don't even have the rights to bring a habeas. In fact, it includes a waiver of the right to recuse your judge, although I don't see how under any law that could be viable, that you are going to think about bringing a habeas. They're not represented for that purpose. These folks are in a program where they have been told that if they challenge anything, they will be terminated from the program and they will be multi-billed and go to jail. Now, they all have children. They have jobs. They have homes. They take this program because they're trying to avoid jail. But I have to tell you that my client spent over 570 days in the local jail, over 275 of which were these sanctions for things like… Where are your clients now? They have been released. They were revoked because they stipulated to revocation to finally get away from this, like many others. And they went to prison, in the state prison, where they did actually some of the intensive probation work that or the intensive treatment work that the statute contemplates should take place if there's a violation or infraction of the original program. And then they were ultimately released, but they did several years. And they didn't get the credit for the time that they spent in the jail, most of it. So when there's a question as to what could be the declaratory injunctive relief, I thought that Judge Malazzo, when she said that a declaration that the practices were unlawful would not impact on them, was clearly not true. At the time she wrote this, we didn't even have the discovery, finding out, that the DOC, the Department of Corrections, had relied on what the locals said, the sheriff, as to credit for the time that they served in the jail. I was thinking you were wrapping up. I appreciate your passion for your client, but you've used your time and you've saved time for rebuttal. Thank you. Is it due for? Is that right? Close. Due for, yes. Silent seat. Good morning, Your Honors. May it please the Court. My name is Mindy Nunes. Due for. And I represent the defendants' appellees who were administrators of Louisiana's 24th Judicial District Court's drug court program, a program that offers nonviolent drug offenders a chance at rehabilitation and a clean record in lieu of a criminal conviction and jail time, a program that enjoys success. If you look at Record on Appeal, page number 1042, you'll see that there are high graduation rates and low recidivism rates in these drug court programs. Today the Court considers whether the plaintiffs have a 1983 cause of action for damages. I'm wondering about this August 25th incident. Even if we assume arguendo this is a court program, judge is in charge, the court administrators, whether they're making recommendations or doing ministerial acts, are under the umbrella, how can you explain that the judge said, you know, you're fine, dismissed, no problem, and Carlisle walks out into the arms of the waiting officers to arrest him for not appearing at a hearing he was at? How can that possibly be within the umbrella? Well, I would first direct you to two orders by Judge Faulkner and the Record on Appeal 167. Actually, the August 25th is 163. And here's an order by the Court, despite what plaintiff says, that says he appeared before the bar of the Court. He was represented by Joseph Marino. The Court ordered defendant be given a sanction of 6 months flat time contempt. She said the judge didn't order flat time, that somehow the administrators concocted this flat time scheme. It's right here. The judge ordered it. There is an order underlying the detention that the plaintiffs complain about. These administrators don't detain anyone. They don't sentence anyone. They don't sanction anyone. What they do are issue recommendations, like a probation officer or a parole officer. They are the eyes and the ears of the Court. They give the judge recommendations, but ultimately it is the judge who issues sentencing or sanctioning orders who finds defendants in contempt. And in this case, the plaintiff complains, oh, well, the judge is using contempt to sanction them. But that isn't true, actually. If you believe what she says in her petition, which we take as true, she says that they wanted him to be sanctioned and the judge gave him a chance to go get his paperwork or to find his paperwork. So here you have a recommendation from the team and a judge who says, no, I don't agree with that. Why? Because it's the judge's ultimate decision. Tell me about what happens when you were dismissed from the program and then you have to go serve a sentence, serve some time, as a result of your conviction. And she says, I think, and I may have misunderstood, that there was an order that credit for time served was supposed to be given, but that there were instances where that did not occur. So tell me about that. So first I would just say factually that's untrue. So if you look at the — Which part? Go slow with me. What's not true? Is there such an order that you're supposed to get credit for time served? No. There is no such order. The order actually says flat time, and flat time means that there is no credit for good time served. So the judge ordered flat time. It's here in the record. Why shouldn't they get credit for the flat time against their ultimate sentence? Well, perhaps they should, but that's not the question before the court. I mean, if the plaintiffs are challenging the duration of their confinement or their confinement itself, those claims have to be raised through a petition for habeas corpus. But there is no general order that people get credit for time served on these infractions when they're in the drug treatment court. There is no order that says that time gets credited ultimately toward a sentence if there is a sentence. Not that I'm aware of. All right. Even if there is, it's up to a judge to give credit for time served. These appellees, these administrators have no power to call up and say, let's give credit for time served. And they didn't do that. The judge ordered flat time. If that's unconstitutional or illegal under Louisiana law, those are judicial acts that are covered by judicial immunity and that extend to any recommendations that led to those acts to the drug court administrators for any recommendations they might have given that caused the judge to give flat time or to find him in contempt. And I want to say this about the drug treatment courts are a creature of statute. They are, Your Honor. All right. Yes. Do they exist in every parish in Louisiana? I'm not sure if they're in every parish, but I believe they're increasingly in more and more parishes, and now there's, I think, 56 drug courts. They're all overseen administratively and financially by the state supreme court, another indication that this is a court, an arm of the state, and these administrators are entitled to 11th Amendment immunity and any official capacity claims. If you look at the statute, which authorizes the drug courts, you will find evidence all throughout the statute that the judge is the ultimate decision maker, that plaintiffs can be placed on this supervised probation as ordered by the court. They can be confined in a treatment facility at the discretion of the court. The court may impose. The judge may revoke unless the court finds. The court shall order. These people shall report to the court. The court shall inform the defendant. The judge and the district attorney shall consider following factors in reporting to the court. The judge shall make the final determination of eligibility. The judge is the ultimate decision maker pursuant to this statute. I'm looking at this 163, which is August 25, the defendant appeared and was given a sanction. Then you've got 164 says August 25 did not appear and an attachment's been issued. Yes. And the plaintiffs have said these minute entries themselves or these orders themselves are inconsistent, so they can't be trusted. But if there's some mistake in the minute entry by the clerk, again, that is a judicial act entitled to immunity. But it could very well be. Well, I mean, all of this is signed by the deputy clerk. And so I guess I'm, since we're at a 12B stage or 12C or whatever we're at, not at a trial stage, if you had sort of a rogue clerk who just started issuing stuff that the judge did not approve, would that person, let's assume that arguendo, would that person be granted absolute immunity? I don't want to give my law clerks any ideas, but if they just started issuing stuff in my name without me knowing about it, would that be subject to absolute immunity? There is some case, Your Honor, and I'm looking at a case from the District of New Jersey. I know it's not authoritative here. But a clerk of court was immune, and they say even if they acted improper. I apologize. But improper can mean a lot of things. I mean, a judge could issue a ruling because they're just mad at the lawyer and say, I don't like you, so I'm going to rule against your client. That would be extremely improper, highly unethical. And completely subject to absolute immunity. The judge might be subject to a grievance. That's separate. But couldn't be sued for that. But I'm just saying you have a rogue clerk that just issues an order knowing this didn't happen, judge wasn't even there that day, judge did not order this, or judge ordered the reverse. I just think the judge is wrong, so I'm going to issue the order I think is right. Is that person in my hypothetical, hypothetical, subject to absolute immunity? I would answer yes. In that hypothetical, because. And how can that be so? Because the order, the entry that they're, the order that they're issuing, giving an order is a judicial function. Yeah, but giving an order where you have no, they're not a judge. I mean, if. Right. If, when I left the state trial court, if I kept issuing orders for the 191st District Court, would I be subject, and people didn't realize that I was no longer the judge of that court and they were following those orders, would I be granted absolute immunity? I knew I wasn't the judge. I had no authority at that point. So even. You know as the court clerk you're not the judge and you decide to pretend to be and issue an order on that judge's behalf. You think that's okay with total immunity? If you compared this potentially, your hypothetical, to one of the cases where the sheriffs went out and went into someone's house without an order of the court to do that, and the court said that they actually were not entitled to absolute immunity, that is not what happened here. Okay, that's a different question. You know, we don't represent, yeah, we don't represent this minute clerk. So if she got it wrong, she's not a defendant. She's not my client. Our drug court administrators have every interest in this program succeeding so that they can continue to get funding and continue to help people. It's not like they're district attorneys or sheriffs or anyone who has some sort of bias. I will say that if we accept it's true, the allegations in this case is very shocking and not in any way something that can be defended. It doesn't mean it's not subject to absolute immunity, but if you really are trying to help people that are on drugs, treating them this way is not going to do that. So if there's any truth to what they're alleging, someone needs to fix this and clean it up. Whether that's this case, whether that's these defendants, it's a separate question, but I found it quite offensive, the stuff I read. Again, that may not help them win this case, but it is something to be, to me, what you're saying is contradicted by accepting their statements as true. But, Your Honor, if you accept her statements as true, that might be one thing. But if you look at the record, a lot of the statements she's making here are not supported by the record. For example, she told you that the judge said that they should get good time served, and the orders in the record say flat time. So, I mean, I can't, I can't sort of commit this entire record to memory to say that what she just said is not supported by the record. I understand your concern. I would be concerned as well if they were just acting somehow, and sheriffs were listening to them. No notice is given of what's going to happen. No one's allowed to be there. No record. And people can get six months of prison time out of that. That's just not defensible. Again, we may not have the right defendants. It may be subject to immunity. But, honestly, it's very disturbing. But that's not what's happening, though. There are people there. There's a public defender there. There's a prosecutor there. There's a — Why not have a record? Why not have an open court? Well, I mean, there are minutes. And I admit that there are some problems with these minutes. Potentially this person wasn't there when the court called his name, and the minute entry clerk writes that he's not in court, and then later there's a minute entry when he shows up and the judge has the hearing. But the judge is hearing from a public defender, from a DA, from the people who are monitoring the probation, and from the defendant themselves, and he's making the recommendation. At the time they enter, they enter a guilty plea. Is that what happens? They enter a guilty plea. Correct, Your Honor. And then is that a nonadjudication? In other words, does the court withhold adjudicating them guilty of finding them convicted of the offense pending their successful completion of the program? Is that how it works? It's not a deferred prosecution. So they do plead guilty. They enter the program. And is the plea entered? The plea is entered. But it can be expunged. All right. So is a sentence imposed at that time? No. If they're revoked, actually, I want to speak on this because I'm not totally, totally certain, but if they're revoked, then they go back into the regular criminal district court system, which is where you have the judge. But they don't get to undo the plea. That's why I'm asking whether or not the plea is entered. They don't get to undo the plea, but there is no sentence. Let me tell you where I'm going. That's important to me because if I'm in a program and I plead and I got sentenced to two years and then you're giving me six months and slapping me around and all of that, maybe I say I need to try to make this kind of work and maybe the six months is shorter than the two that I already pleaded guilty to. But if I enter the plea of guilty and I just go back into the regular criminal justice system where now I'm facing a sentencing hearing and a six months for being late to a meeting, maybe it's easier for me to decide just to go back into the regular mainstream criminal justice system. So I guess it's kind of important for me to know, which I guess goes back to the argument about getting rid of it on a 12B6 rather than waiting for a Rule 56. I think one thing that's relevant is that if they complete this program, then their conviction goes away. So they do have that. So it's not that they also don't serve in jail, but they're given a chance at sort of a clean slate in this program. But I would like to address the standing issue in this case. My question is you don't know. You don't know whether or not they get sentenced at the time they enter that guilty plea. You don't know. May I check with my co-counsel? You may. We believe they do get sentenced when they enter the guilty plea, and then that sentence is deferred pending the completion of the program, and then they have the opportunity to expunge the record, expunge the conviction from the record after completion. So sentence – A whole lot more gravity to what happens in the drug treatment court if I've already entered a plea and been sentenced. Go ahead. Okay. So I would like, if I may, with the rest of my time, unless Your Honors have any more questions regarding immunity. I think we're going to get to standing. Okay. I think that clearly if, in fact, they can sue for damages, if that's possible, then they have standing for that because they clearly have been in and out of prison on these contempts. If all that they can sue for is future injunction, then your argument is, well, you're out, you're on the street, you've done your time, you ain't got nothing to sue for. Is that a fair summary? Correct. Yes. Okay. So there has to be an injury that can be redressed. Not only are they no longer in jail at all, they're not in the drug court program. It's very unlikely that they would ever be readmitted to the drug court program pursuant to the eligibility requirements in the statute. And even if they could be readmitted, it's not these defendants who would make that decision. Again, it would be the judge who makes the decision on eligibility. So it's purely hypothetical that they might ever come into contact with the policies and procedures and actions that they complain about in this case. Your argument on what you called standing, is there no case in controversy with respect to injunctive relief in this case? Correct. Okay. Any prospective relief, injunctive or declaratory judgment. I mean, there's no standing. And I would also point out that the plaintiffs are no longer administrators at the drug court. One has retired, one has moved on. The defendants. I'm sorry, the defendants. I apologize, Your Honor. Just so I understand, I understood that point with respect to case or controversy. I'm looking at the opening brief of the appellant in this case. In the first sentence, we talk about Eleventh Amendment, sovereign immunity or absolute judicial immunity. I've heard precious little argument about the Eleventh Amendment. And I know you mentioned it at the beginning. What is your argument with respect to the Eleventh Amendment? Yes. I understand that to be with respect to claims against these administrators in their official capacity. Exactly. So what's your argument with respect to that? The argument is that the Fifth Circuit has held that State courts are arms of the State entitled to Eleventh Amendment immunity, that this is a State court, that it is a division of the 24th Judicial District Court, that it's established that way by statute. Plaintiffs make some arguments that, well, it could be established as a nonprofit. Well, it could, but in the 24th Judicial District, it wasn't. And even if it were, it still would be a division of the court, an arm of the State. These are State court employees who are being sued. It is the State Office of Risk Management who is paying for their defense, and it would be the State who would pay for any judgment rendered against them. So they are entitled to Eleventh Amendment immunity in their official capacity. I know I'm asking you to make the other side's argument for them, but among the factors that we typically look to for the Eleventh Amendment, do any of them cut in favor of a lack of Eleventh Amendment immunity? No. Well, the last two, so there's the six factors in Williams v. Dallet Area Rapid Transport, how the State law characterizes the drug court as a division of the court, its source of funding through the State, the degree of local autonomy. It's the State court, not the parish, as they say. The parish has said, these are not employees or quasi-employees or contractors. The parish has no control. And the concern with local versus statewide problems, the district court found, well, yeah, they are concerned with sort of local recidivism, but it's also a State, you know, a statewide program that is focused on reducing recidivism. That one may be a little murky, but you don't need all the factors. All the factors. Yes. Exactly. Thank you, Your Honors. I really have to make two very important points. Judge Graves, there is, there are two orders. The problem is they weren't relevant in this argument, and they are by Judge Schlegel. They weren't relevant when this was heard, but it's why a 12B should never be granted in these circumstances. Judge Schlegel, when he received the motion to terminate the probations and to revoke, then issued an order resentencing them, and he said they will receive credit for all time served in accordance with 1353.04 and Article 880. 1353.04 of the Drug Court Statute says that you must receive all credit for all time served when you're in the program. Even flat time. Pardon? Even flat time. Yes. And so the problem was nobody understood how important that was because they were sent off to prison. It wasn't until they didn't get the credit when they were in prison that it became relevant. That issue is now before the district court because the sheriff is the one who wrote the jail credit letters at the instructions of these appellees that they shouldn't get credit for all of it, and he sent those jail credit letters to the DOC, and that's through Rule 245 on the DOC, and getting into, finally, some discovery because of the class action claims against the sheriff. That's really an administrative decision made by the Department of Corrections. Is that what you're saying? No. This was a decision made by the sheriff after conferring with these appellees. But I guess what I'm asking you is how can the sheriff decide whether or not somebody gets credit for time served? That's DOC regulation. That is Louisiana DOC regulation, and it's currently in front. So listen to me for a second, please. So that's not an administrative decision? DOC responded to it when a challenge was made and said these, we rely entirely on the jail credit letters made by the sheriff of Jefferson Parish. Maybe I'm not asking my question clearly enough. That's not a judicial decision. No, it's not a judicial decision. That was a decision. An administrative decision. inside the sheriff's office. So who is the sheriff consulting as to whether to write those jail credit letters that way? He's consulting these appellees, and that is in total defiance of the written order of Judge Schlegel, which said they get credit for time served, and the statute, which borders it. But if these appellees are supposed to follow what the sheriff, if the sheriff's the one with the discretion, then how can we uphold these appellees? I mean, it seems like you have a lot of good arguments, but against the wrong people. No, it's complicated, Judge. In fact, I shouldn't even be getting into this, but what was pending, was filed, was a fourth amending complaint arguing a conspiracy between these appellees and the sheriff, and the magistrate denied it. It's currently on objection to that ruling at the district court level because it became clear what was really going on. These are not state employees. I beg to differ. None of them. These are parish people. It's the compliance officer, and you've got that Cleese appeal in front of you right now. There is another appeal. Well, I'm not to keep referring to when I was on the state court, but I was. The court coordinator for my court was paid by the county, but she was hired and fired by me. I did not fire her. I could have. And so I would say if she did something I told her to, she was under my direction as a state district judge, even though the county, Dallas County, was who was paying her. I think she was a hybrid. I believe this is a hybrid entity. I really do. I think that it was parish-centric. I think that all of these people come from the sheriff's office. They come from parish offices, and it was a parish program until the only reason why the parish was dismissed was because when the opposition was filed, they attached a contract between Judge Molison, who's the chief of the district court, and Mr. McNair's LLC, and he was the director of counseling. So, because Judge Molison had contracted with McNair's LLC, who is also a defendant and one of these administrators, the judge dismissed the parish. I've been arguing this was a parish-based organization from the beginning. I still cannot accept that in this country and in this state that we can have a court that has no record, no hearings, no notice, no court reporters, closed courtroom. That's not a court. You could have a Boy Scout meeting in these four walls. It wouldn't make it a court. What they conducted was a program, and every, the probation laws were completely ignored. If there were indeed a violation, you would expect that Article 899, which is the Code of Criminal Procedure Article in Louisiana, would be adhered to, because that requires that if you go to jail on a probation violation, you have a right to a 72-hour bond hearing. You have a right to a probable cause hearing. None of that was ever followed. It was not a court. I very much appreciate your attention to your clients, but your time has expired. Thank you, and thank you. And I and my clients deeply appreciate the opportunity to appear before you today. It is an honor. Okay. Thank you. Thank you. We appreciate both sides, and the case is under submission. And this concludes arguments for today. We reconvene tomorrow at 9 a.m. All rise.